IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| SALON PROFESSIONAL EDUCATION COMPANY, LLC d/b/a SPEC,<br><br>Plaintiff,<br><br>v.<br><br>BIANCHI GROUP LLC,<br><br>Defendant. | Case No.:<br><br>**VERIFIED COMPLAINT** |

Plaintiff SALON PROFESSIONAL EDUCATION COMPANY, LLC d/b/a SPEC ("SPEC" or "Plaintiff"), by and through undersigned counsel, alleges for its Verified Complaint against Defendant BIANCHI GROUP LLC ("Bianchi Group" or "Defendant"), as follows:

**PRELIMINARY STATEMENT**

1. This is an action for injunctive relief and damages arising from Defendant's breach of its franchise agreement. SPEC is a franchisor of cosmetology and beauty schools, offering franchises the right to operate under SPEC's distinctive systems and marks (including "THE SALON PROFESSIONAL ACADEMY®" and "ELEVATE SALON INSTITUTE®"). Defendant Bianchi Group is the SPEC franchisee operating as "Elevate Salon Institute" in Royal Oak, Michigan under a franchise agreement (the "Royal Oak Franchise Agreement") with SPEC that is set to expire on September 29, 2025. Bianchi Group has made clear through its conduct and communications that it does not intend to honor its contractual obligations to cease operations and refrain from competition once the franchise term ends. Instead, on information and belief, Defendant plans to simply continue operating an independent cosmetology school at the Royal Oak location after the franchise agreement expires—a blatant violation of the post-termination

covenants in the Royal Oak Franchise Agreement. SPEC brings this action to enforce the parties' agreement, to prevent irreparable harm to its franchise system by way of preliminary and permanent injunctions, and to recover attorneys' fees incurred in enforcing Defendant's compliance with the Royal Oak Franchise Agreement.

## PARTIES

2. Plaintiff SPEC is a limited liability company organized under the laws of North Dakota, with its principal place of business at 4377 15th Avenue South, Fargo, North Dakota 58103. SPEC's members are Sam Shimer (a citizen of Florida), Jill Krahn (a citizen of North Dakota), Christopher Baran (a citizen of Arizona), and Jodi Brown (a citizen of North Dakota). Accordingly, SPEC is a citizen of Florida, North Dakota, and Arizona for diversity purposes.

3. Defendant Bianchi Group is a Michigan limited liability company with its principal place of business at 4050 Crooks Road, Royal Oak, Michigan 48073. Bianchi Group operates two SPEC-franchised cosmetology schools—one in Royal Oak, Michigan, and the other in Utica, Michigan. Upon information and belief, Bianchi Group has four members: Michael Bianchi, Nicholas Bianchi, Ralph Bianchi, and Joshua Kane, all of whom are citizens of Michigan. Joshua Kane is the Executive Director of Bianchi Group's Royal Oak location, as well as the Defendant's second franchised location in Utica, Michigan (the "Utica School"), and has acted as the primary point of contact with SPEC in connection with the issues giving rise to the current dispute.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), as the dispute is between citizens of different states. SPEC is a citizen of North Dakota, Florida, and Arizona for diversity purposes, and Defendant is a citizen of Michigan as alleged above. The amount in controversy exceeds $75,000, exclusive of interest and costs. Specifically, in actions

seeking injunctive or declaratory relief, "the amount in controversy is the value to the plaintiff of the right that is in issue." *Usery v. Anadarko Petroleum Corp.*, 606 F.3d 1017, 1018 (8th Cir. 2010). Here, the value of SPEC's rights substantially surpasses the jurisdictional threshold because the Royal Oak franchise generates significant annual royalty revenue, and the enforcement of SPEC's two-year, 50-mile post-termination non-compete covenant, coupled with the protection of its goodwill, franchise systems, and market presence, clearly holds a value exceeding $75,000.

5. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. The franchise agreement's forum-selection clause designates the courts of North Dakota (including this Court) as the agreed venue for disputes between the parties. Moreover, SPEC's principal operations and the harm from Defendant's conduct are centered in this District, making this forum appropriate for resolution of the dispute.

## FACTUAL BACKGROUND

### A. The Franchise Agreement and its Post-Term Obligations

6. On September 29, 2015, SPEC and Bianchi Group entered into the Royal Oak Franchise Agreement, as amended, granting Bianchi Group the right to operate a SPEC franchised cosmetology school that was later opened at 4050 Crooks Road, Royal Oak, Michigan (the "Royal Oak School"). The Royal Oak Franchise Agreement provided an initial ten-year term set to expire on September 29, 2025 (the "Termination Date"). A true and correct copy of the Royal Oak Franchise Agreement is attached as Exhibit A.

7. The Royal Oak Franchise Agreement imposes several important obligations on Defendant effective upon termination or expiration of the franchise term, chief among them the obligation to cease operating the franchised cosmetology school at termination.

8. Specifically, Section 12.1 requires that Defendant immediately discontinue all operations under SPEC's systems at the Royal Oak School (or within the defined territory) and cease using SPEC's trademarks, logos, and proprietary materials. *See* Exhibit A at § 12.1.

9. Defendant must also refrain from operating any competing cosmetology or beauty school within a 50-mile radius of the former location for 24 months following termination. *See* Exhibit A at § 13.1.

10. In short, Defendant agreed that on September 29, 2025, it would shut down the Royal Oak School and not operate a cosmetology school in the surrounding area for two years.

11. Defendant must also comply with various wind-down obligations, including returning or destroying confidential materials, paying outstanding fees, cooperating in the transfer of certain assets to SPEC, and conducting an orderly closure in accordance with all applicable federal, state, and accrediting agency laws, rules, and regulations. *See* Exhibit A at §§ 4.13(a), 12.1, 12.2, 12.6.

12. Closing a cosmetology school and transferring its accreditation to another campus is a complex, multi-step process governed by federal regulations, state licensing requirements, and detailed standards imposed by the National Accrediting Commission of Career Arts & Sciences ("NACCAS"). Defendant's obligation to properly manage this process is both critical and time sensitive, with potentially very adverse consequences for a school's students and owners if handled improperly. SPEC's regulatory expert has prepared a detailed timeline outlining key steps and deadlines required for the Bianchi Group to comply with these guidelines, a true and correct copy of which is attached as Exhibit B.

13. Defendant's failure to initiate even the preliminary steps required by this timeline strongly suggests Defendant does not intend to comply with its closure and post-termination

obligations, constituting an anticipatory breach of the Royal Oak Franchise Agreement. Moreover, given Defendant's failure to date to initiate any required actions to transfer the Main Campus accreditation from the Royal Oak School to its Utica School or otherwise prepare for an orderly closure, it is likely already practically impossible for Defendant to timely complete all necessary closure steps by the Termination Date. Notwithstanding Defendant's delays, SPEC has offered assistance and cooperation to Defendant, including granting reasonable extensions if needed, to achieve compliance and an orderly and compliant closure.

14. The Royal Oak School currently holds accreditation from NACCAS as a "Main Campus." In order to cease operations in compliance with regulatory and contractual obligations, Defendant should have, by this point, discontinued new student enrollments, provided timely notice to students and staff regarding the planned closure, arranged for appropriate teach-out or student transfer options, and either made arrangements to transition operations and NACCAS accreditation to the Utica School or made plans to formally surrender the NACCAS accreditation for the Royal Oak School at its closure.

15. In addition, Defendant has further obligations, prior to closure, to complete all outstanding student financial aid responsibilities and reporting, and to notify relevant state licensing bodies and agencies responsible for Title IV federal funding. Additionally, if the Bianchi Group intends to offer a teach-out for Royal Oak students at the Utica School, then students currently enrolling at Royal Oak must be clearly informed of this plan prior to enrollment. Failing to provide this disclosure—while continuing to enroll new students with knowledge of the impending closure and an assumed teach-out arrangement—constitutes deceptive and potentially fraudulent conduct.

16. In Section 18.14 of the Royal Oak Agreement, the Bianchi Group expressly acknowledges that "a single franchisee's failure to comply with the terms of its franchise agreement is likely to cause irreparable damage" to SPEC. In the event of such breach, SPEC "may seek an injunction restraining such breach or a decree of specific performance (together with recovery of reasonable attorneys' fees and costs incurred in obtaining such equitable relief). It may do so without demonstrating or proving any irreparable damage." *See* Exhibit A at § 18.13.

17. The Royal Oak Franchise Agreement further provides that SPEC may seek such injunctive relief without posting any bond or security. However, if a court of competent jurisdiction requires a bond or security, a bond or security of $1,000 will be adequate. *See id.*

18. Pursuant to section 18.15 of the Royal Oak Franchise Agreement, SPEC is entitled to recover its attorney's fees and costs in the event of a successful litigation to enforce the agreement against Defendant. *See id.* at § 18.15.

19. The foregoing obligations are reasonable, customary and necessary to protect SPEC's legitimate interest in its franchise business, including, inter alia: (a) protecting its goodwill and reputation; (b) retaining franchisee relationships; (c) preserving the integrity of SPEC's nationwide franchise network.

**B.     Defendant's Decision Not to Renew the Royal Oak Franchise Agreement and Upcoming Termination**

20. By letter dated September 29, 2024, Bianchi Group notified SPEC that it would not exercise its option to renew the Royal Oak Franchise Agreement at the end of its term. Accordingly, the Royal Oak Franchise Agreement is slated to expire on September 29, 2025.

21. Upon receiving this news, SPEC in good faith attempted to discuss alternatives or accommodations that might persuade Defendant to renew rather than close the Royal Oak School.

However, Kane and other principals of Bianchi Group rebuffed these efforts, confirming that the Royal Oak School would indeed leave the SPEC system at term-end.

22. Given Defendant's decision not to renew, SPEC anticipated that the Royal Oak School would wind down over the remaining months of the term and then terminate in an orderly fashion on September 29, 2025.

23. As the Termination Date approached, SPEC formally reminded Defendant of its contractual obligations regarding the upcoming termination. On May 21, 2025, SPEC (through counsel) sent Defendant written notice of the impending franchise expiration and demanded that the Royal Oak School be closed on the Termination Date and that Defendant comply with all post-termination covenants. A true and correct copy of SPEC's May 21, 2025 letter is attached as Exhibit C.

24. In the May 21, 2025 letter, SPEC reminded the Defendant of the concrete steps that it needed to take to prepare for closure and fulfill its obligations under the Royal Oak Franchise Agreement. These steps included, *inter alia*: (a) ceasing the enrollment of new students at the Royal Oak location (effective immediately, so as not to enroll students whose coursework would extend beyond the closing date); (b) formulating and executing a plan to transfer existing students to the Utica School or other institutions (or otherwise arranging teach-out programs) so that those students could complete their education after the Royal Oak School's closure; and (c) taking action to transfer the Royal Oak School's Main Campus accreditation with NACCAS to the Utica School, or otherwise responsibly wind down the accreditation and notify the relevant authorities of the closure. These measures were in line with U.S. Department of Education and NACCAS requirements for closing a school, and they were necessary to implement in advance of termination to effectuate Defendant's promise to terminate operations on September 29, 2025, pursuant to

Section 12.1 of the Royal Oak Franchise Agreement. Furthermore, such requirements are necessary, pursuant to the US Department of Education, NACCAS and state agencies to protect the students, and thus the goodwill of SPEC.

25. SPEC's May 21, 2025 letter made clear that Defendant was expected to honor its contractual duties by not enrolling any new students in the Royal Oak School who could not finish before closure, by arranging for a teach-out or properly disclosed student transfer plan in accordance with all applicable laws, rules, and regulations, and by otherwise ensuring the Royal Oak location would actually cease functioning as a cosmetology school after the Termination Date.

C. **Defendant's Lack of Assurances and Failure to Prepare for Closing**

26. Defendant, through counsel, responded by letter dated May 30, 2025. Rather than provide the requested assurance of compliance, Defendant's response was equivocal and evasive. A true and correct copy of Defendant's May 30, 2025 letter is attached as Exhibit D.

27. Defendant's May 30, 2025 letter did not confirm that Defendant would cease operations at the Royal Oak location as a cosmetology school on September 29, 2025, nor did it address the post-term non-compete covenant at all. Instead, Defendant stated only that Bianchi Group "intends to meet all of its obligations pursuant to the terms of the Royal Oak Franchise Agreement *through the balance of the franchise term*." *See id.* (emphasis added).

28. In other words, Defendant limited its promise of compliance to the period *up to* the Termination Date, conspicuously omitting any commitment to what happens afterward. It gave no answer regarding whether it would stop enrolling new students, whether it would transfer students or facilitate a teach-out, or whether it would refrain from operating the present location as a competing school once the Royal Oak Franchise Agreement expired.

29. Defendant's refusal to directly acknowledge its post-termination obligations,

coupled with silence as to concrete wind-down steps, has heightened SPEC's concern that Defendant intends to simply ignore the contract's covenants once the term expires.

30. Indeed, Defendant's conduct since May 2025 has been consistent with an intent to flout the contract. To SPEC's knowledge, Defendant has failed to take *any* of the myriad of steps necessary to wind down the Royal Oak School's operations in an orderly manner in order to satisfy its obligation to close the school on the Termination Date in compliance with federal, state or NACCAS requirements.

31. For example, Defendant has not stopped enrolling new students at the Royal Oak School—it continues to enroll students whose educational programs would extend well past September 29, 2025—nor has it made arrangements to transfer existing students to its Utica School or through a teach-out program as the federal and NACCAS rules require.

32. As of the date of this Complaint, there is no indication that Defendant has even notified students or staff that the Royal Oak School is closing on September 29, 2025, nor has it posted the required closure notice on its website.

33. Defendant's inaction (and failure to alert students/employees of a looming closure) suggests that it instead plans to keep the Royal Oak School running as a going concern after September 29, 2025, albeit under a different name, which would be a flagrant violation of the post-termination covenants under the Royal Oak Franchise Agreement.

34. In further contravention of its duties, Defendant has attempted to prematurely cut ties with SPEC before the franchise term even ends. For instance, on April 4, 2025, Defendant instructed one of SPEC's authorized software vendors to terminate SPEC's access to the franchisee's business information systems for the Royal Oak and Utica Schools.

35. By unilaterally attempting to cut off SPEC's access to the schools' data and systems

(student management software, etc.), Defendant attempted to exclude SPEC from insight into Royal Oak's and Utica's operations even while the Royal Oak Franchise Agreement remains in effect. This action violates Section 8.3(a) of the Royal Oak Franchise Agreement under which Defendant is required to permit SPEC to "access, and retrieve any information it desires from Franchisee's Computer System to determine, among other things, sales activity and Gross Revenues." *See* Exhibit A at § 8.3(a).

36. Such attempt to prematurely sever such ties is a strong indicator that Defendant has no intention of engaging in an orderly transition; rather, Defendant appears to be positioning itself to continue the business on its own and restrict SPEC's ability to monitor or enforce compliance.

37. Defendant's refusal to inform SPEC of any meaningful progress regarding the impending closure violates SPEC's explicit informational rights and Defendant's reporting obligations under the Royal Oak Franchise Agreement. Specifically, Section 8.2 of the Royal Oak Franchise Agreement requires Defendant to submit to SPEC such "records, reports, and information" as Franchisor requires "from time to time." *See* Exhibit A at § 8.2. Given the critical and time sensitive nature of Defendant's regulatory compliance and accreditation transfer obligations, Defendant should be ordered to provide regular status reports to SPEC, detailing progress in meeting all closure obligations in compliance with all applicable federal regulations, state licensing requirements, and NACCAS guidelines.

D. **Defendant's Anticipatory Breach and Irreparable Harm to SPEC**

38. Defendant's refusal to commit to post-termination compliance, coupled with its failure to halt new enrollments or arrange for student transfers and to take other necessary steps in advance to close the Royal Oak School on the Termination Date, as well as any of the other myriad of steps that have to be taken to wind down as a cosmetology school in an orderly fashion,

constitute an anticipatory breach of contract.

39. Defendant has effectively communicated through its conduct, if not explicit words, that it does not intend to perform the critical covenant requiring it to cease operations on the Termination Date and honor the two-year non-compete thereafter.

40. Under the circumstances, SPEC is entitled to treat this as an anticipatory repudiation and seek relief now, rather than waiting until the breach fully manifests on September 30, 2025.

41. Moreover, certain of Defendant's actions already amount to present breaches of the Royal Oak Agreement—for example, attempting to disable SPEC's access to required business systems violates the franchisee's duty to cooperate and follow SPEC's system standards.

42. In any event, it is clear that absent court intervention, Defendant will continue to breach and ultimately outright violate the Royal Oak Franchise Agreement's post-term restrictive covenants.

43. Defendant's threatened breach—the continued operation of an unauthorized, competing cosmetology school at the Royal Oak location (or nearby) after September 29, 2025—will cause immediate and irreparable harm to SPEC, for which monetary damages alone are inadequate.

44. The harm includes, but is not limited to: loss of SPEC's goodwill and brand reputation in the Royal Oak market; confusion among consumers and prospective students (who may believe Defendant's school is still part of the SPEC franchise system, when in fact it would not be); and damage to the integrity of SPEC's nationwide franchise network (as other franchisees may be emboldened to ignore their own post-termination covenants if Defendant is seen to flout theirs with impunity).

45. The Royal Oak Franchise Agreement itself expressly acknowledges that a breach of the post-term covenants, such as the non-compete and the obligation to cease operations, would cause irreparable injury to SPEC, and that SPEC is entitled to injunctive relief and attorneys' fees to enforce those covenants. *See* Exhibit A at §§ 18.14-18.15.

46. In sum, without immediate injunctive relief, SPEC will suffer irreparable damage to its business and brand, and it has no adequate remedy at law to prevent that harm. Injunctive enforcement of the post-term covenants is necessary to protect SPEC's legitimate business interests and the benefit of its bargain under the franchise agreements.

## COUNT ONE
### *Breach of Contract (Royal Oak Franchise Agreement)*

47. Plaintiff SPEC incorporates and re-alleges Paragraphs 1 through 46 as if fully set forth herein.

48. SPEC and Bianchi Group entered into the Royal Oak Franchise Agreement, a valid and enforceable contract supported by mutual consideration.

49. Under Article 12 of the Royal Oak Franchise Agreement, upon expiration on September 29, 2025, Bianchi Group is expressly required to cease operations of the Royal Oak School as a cosmetology school, discontinue the use of SPEC's system, trademarks, service marks, logos, trade dress, and proprietary materials, and fully dissociate the Royal Oak School from SPEC's brand. *See* Exhibit A at § 12.1.

50. The Royal Oak Franchise Agreement further obligates Bianchi Group to undertake and complete all wind-down obligations, including but not limited to the return or destruction of confidential manuals, payment of outstanding fees, and cooperation in the orderly transfer of designated assets to SPEC. Critically, the Agreement further mandates that such wind-down be carried out in strict compliance with all applicable federal, state, and accrediting agency laws,

rules, and regulations. These obligations are both comprehensive and time-sensitive, requiring advance planning and timely execution to ensure full compliance and protection of its students before the expiration of the franchise term. *See id.* at §§ 4.13(a), 12.1–12.6.

51.     In addition, under Section 13.1(b), Bianchi Group and its principals and affiliates agreed that for 24 months after termination, they would not operate, own, or have any involvement with a competing cosmetology or beauty school within a 50-mile radius of the Royal Oak location. *See id.* at § 13.1(b).

52.     Through its actions described above, including but not limited to continuing to enroll students who would matriculate beyond the Termination Date, failing to arrange for student teach-outs or transfers, failing to transfer accreditation to its Utica School, attempting to restrict SPEC's access to critical systems, and refusing to provide timely and complete reports regarding its wind-down obligations as required under Section 8.2, Defendant has demonstrated its intention not to comply with its post-termination obligations, constituting an anticipatory breach of Sections 4.13(a), 8.2, 12.1, and 13.1(b) of the Royal Oak Franchise Agreement.

53.     Defendant's ongoing breaches have caused, and will continue to cause, irreparable harm to SPEC's goodwill, reputation, franchise system integrity, and injuries explicitly recognized as irreparable within the Agreement. *See* Exhibit A at § 18.14.

54.     Although SPEC has not yet suffered quantifiable monetary harm, SPEC seeks nominal damages in recognition of Defendant's anticipatory breach and to vindicate SPEC's contractual rights. SPEC expressly reserves the right to seek actual damages in the future, including but not limited to lost royalties, harm to goodwill, reputational harm, disruption to the SPEC franchise system, and other consequential damages, should those damages become ascertainable.

55. Pursuant to Section 18.14, SPEC is entitled to preliminary and permanent injunctive relief, nominal damages, and the reservation of its right to seek actual damages, along with recovery of attorneys' fees and costs without the necessity of demonstrating irreparable harm. *See* Exhibit A at § 18.14.

56. SPEC has no adequate remedy at law for Defendant's breaches and thus requires immediate injunctive relief to enforce compliance and prevent further harm.

57. Defendant's refusal to provide SPEC with regular reports and information concerning its compliance efforts also constitutes a breach of Section 8.2 of the Royal Oak Franchise Agreement. *See id.* at § 8.2. Given the regulatory complexity of the required closure process and the potential harm to students, SPEC's franchise system, and accrediting relationships, timely and accurate reporting is essential to facilitate oversight and prevent further violations of the Agreement.

58. Moreover, due to the complexity and multi-step nature of the accreditation transfer and school closure procedures, SPEC is also entitled to an order for specific performance compelling Defendant to promptly undertake and complete the required closure procedures for the Royal Oak School to responsibly wind down operations in compliance with all applicable federal regulations, state licensing requirements, and NACCAS guidelines as mandated by Section 4.13(a) of the Royal Oak Franchise Agreement. *See id.* at § 4.13(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff SPEC respectfully requests the following relief from the Court:

A. A preliminary injunction immediately enjoining Defendant Bianchi Group LLC, and all individuals acting in concert with Defendant, from:

        1.    Continuing to operate the Royal Oak cosmetology school (or any non-franchised cosmetology or beauty school) at 4050 Crooks Road, Royal Oak, Michigan, or within a 50-mile radius thereof, for a period of 24 months following the Termination Date of September 29, 2025;

        2.    Using SPEC's trademarks, service marks, logos, proprietary curriculum, or other intellectual property post-termination (other than as authorized at the Utica School);

        3.    Continuing to enroll students whose programs extend beyond September 29, 2025, without an appropriate teach-out or properly disclosed transfer plan in accordance with all applicable laws, rules, and regulations; and

        4.    Otherwise violating any post-termination obligations set forth in Articles 12 and 13 of the Royal Oak Franchise Agreement.

    B.    An order for specific performance requiring Defendant to commence and complete the required closure procedures for the Royal Oak School to responsibly wind down operations in accordance with all applicable federal regulations, state licensing requirements, and NACCAS guidelines, including regular reporting by Defendant to SPEC concerning its compliance and progress toward closure pursuant to Defendant's reporting obligations under Section 8.2 of the Royal Oak Franchise Agreement.

    C.    Nominal damages in recognition of Defendant's anticipatory breach of the Royal Oak Franchise Agreement and to vindicate SPEC's contractual rights.

    D.    Reserving SPEC's right to seek actual damages incurred as a result of any realized breach or further harm.

E.  An award of SPEC's reasonable attorneys' fees, litigation costs, and expenses incurred in enforcing compliance with the Royal Oak Agreement as expressly provided in Sections 18.14-18.15.

F.  Pre- and post-judgment interest to the extent allowed by law.

G.  Any other relief this Court deems just and appropriate.

Date: July 1, 2025

**PLAINTIFF THE SALON PROFESSIONAL EDUCATION COMPANY, LLC D/B/A SPEC**

*/s/ Susan B. Meyer*
Susan B. Meyer
GORDON REES SCULLY MANSUKHANI, LLP
3523 45th Street South Suite 100
Fargo, ND 58104
Tel.: (505) 998-9008
smeyer@grsm.com

GORDON REES SCULLY MANSUKHANI LLP
Peter G. Siachos (*pro hac vice forthcoming*)
677 King Street, Suite 450
Charleston, SC 29403
Tel.: (843) 714-2505
psiachos@grsm.com

Clair E. Wischusen (*pro hac vice forthcoming*)
277 S. Washington Street, Suite 550
Alexandria, VA 22314
Tel.: (703) 650-7030
cwischusen@grsm.com

## **VERIFICATION**

Samuel L. Shimer does hereby verify and state pursuant to 28 U.S.C § 1746:

I am Chairman of Salon Professional Education Company, LLC d/b/a SPEC ("SPEC"). I have read the foregoing Verified Complaint, know the contents thereof, and state the factual allegations are true and correct. I base this Verification on my own knowledge, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true and correct. The grounds of my knowledge, information, and belief are derived from my position as Chairman of SPEC, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of SPEC's records and conversations with SPEC's employees.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 1st day of July 2025.

_____
Samuel L. Shimer